# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY J. PAINADATH,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 24-CV-6567 |
| | : |
| THOMAS JEFFERSON<br>UNIVERSITY HOSPITALS, *et al.*,<br>    *Defendants*. | :<br>:<br>: |

## MEMORANDUM

**Pappert, J.**                                                                                             **July 3, 2025**

Jerry J. Painadath, an unrepresented litigant, filed an amended complaint (ECF No. 7) asserting employment claims against his former employers, Thomas Jefferson University Hospitals (TJUH") and Jefferson Einstein Hospital ("JEH").[1] (AC at 2-3.) For the following reasons, the Court dismisses the Amended Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Painadath will be allowed one final amendment.

I[2]

In his original Complaint, Painadath asserted employment claims and a claim pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C.A. 1395dd, *et seq.* against TJUH and JEH. *Painadath v. Thomas Jefferson Univ. Hosp.*, No. 24-6567, 2025 WL 860495 (E.D. Pa. Mar. 16, 2025). Upon statutory screening, the

---

[1] Also pending is Painadath's Motion for Alternative Service of Process (ECF No. 9), which will be denied.

[2] The factual allegations set forth in this Memorandum are taken from Painadath's AC (ECF No. 7). The Court adopts the pagination supplied by the CM/ECF docketing system.

Court dismissed the Complaint without prejudice for failure to state a claim. *Id.* at *2-*3. Specifically, the Court determined that EMTALA did not provide Painadath with a basis for a plausible claim, and, construing the Complaint to assert an employment-based claim, determined that the factual allegations did "not provide enough information to put the named defendants on notice of the basis for the claims against them." *Id.* at *2. Painadath was granted leave to file an amended complaint. *Id.* at *3.

Painadath now alleges that beginning on June 5, 2023, he was employed as a registered nurse by JEH at its Willow Crest unit, and that TJUH is JEH's "mother hospital." (AC at 2-3.) He alleges that the defendants engage in interstate commerce, are not-for-profit hospitals, and have emergency room departments and in-patient units, including specialized units. (*Id.* at 3.) He identifies the following "decision makers" at Willow Crest: Nurse Manager Madeline Smallwood, Director of Nursing Amina Harris, Human Resources representative Alexis Suarez, and Administrator Michael Cahill. (*Id.* at 4.)

Painadath alleges that in October 2023 while performing rounds, he encountered a patient exhibiting signs of an emergency medical condition. (*Id.* at 5.) He notified Smallwood and a physician and attempted to notify Harris. (*Id.*) When the patient began deteriorating, Painadath obtained a transfer order to send the patient to the emergency room for evaluation. (*Id.*) While he and hospital transport personnel were transferring the patient, Smallwood blocked the door and yelled at him, "Don't send this patient to the ER. We will teach you a lesson if you send this patient to the ER." (*Id.* at 5-6.) Painadath alleges that the patient's chart reflected that he had previously been admitted to the ER for chest pain and that the ER doctors recommended an in-

patient admission to the ICU for stabilization, but instead, the patient was transferred to Willow Crest. (*Id*. at 6.) He claims that this constituted an EMTALA violation, because the patient required admission to the ICU. He further claims that the patient's family was not consulted before the patient was transferred to Willow Crest. (*Id*.)

Painadath contends that on an unidentified date, his request for vacation time was denied although it was requested well ahead of time. (*Id*.) He also claims that on November 7, 2023, Smallwood harassed him and Willow Crest secretary Ade Gibbs assaulted him. (*Id*. at 7.) Hospital security responded to his emergency call, and while Security attempted to de-escalate the situation, Gibbs threatened them, yelling, "I will cut everybody's throat," and "Free Khalistan. Free Palestine." (*Id*.) Two days later, Painadath was suspended pending an investigation. (*Id*.)

While he was suspended, Painadath participated in a job interview conducted by Cahill, who told him, "We will help elevate your career, but you have to give up your lawsuit against Good Shepard Penn Partners. They weren't thinking before they made the decision to terminate you." (*Id*. at 7-8.) Painadath acknowledged that in 2022, he filed a Title VII case against his former employer and that in October 2023, the case was very active.[3] (*Id*. at 8.) On December 1, 2023, Painadath's employment was terminated. (*Id*. at 8.)

---

[3] Painadath refers to *Painadath v. Good Shepherd Penn Partners*, No. 22-3604 (E.D. Pa.). Summary judgment was granted to Good Shepherd Penn Partners, the only remaining defendant, earlier this year. *See Painadath v. Good Shepherd Penn Partners*, No. 22-3604 2025 WL 300604, at *1 (E.D. Pa. Jan. 24, 2025) (granting summary judgment on Title VII claims based on sex, national origin, and religion, on claim cased on anti-violation provision of Older Adult Protective Services Act, and on Affordable Care Act). Painadath's appeal of that decision is pending. It is unclear why Painadath specified that the case was "very active" in October 2023.

Painadath again asserts a claim under EMTALA as well as claims for wrongful and retaliatory termination under Title VII. (*Id.* at 5, 8.) He seeks reinstatement and such other relief as the court deems appropriate. (*Id.* at 9.)

II

The Court has already granted Painadath leave to proceed *in forma pauperis*, and accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Painadath is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*; s*ee also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally

construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support."). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

### III

The Court understands Painadath to be asserting a claim pursuant to EMTALA's whistleblower-protection provision, and a Title VII retaliatory termination claim. For the following reasons, these claims will be dismissed because, as pled, they are not plausible.

### A

"Congress enacted EMTALA based on concerns that, for economic reasons, hospitals either were refusing to treat certain emergency room patients, or were improperly transferring such patients to other institutions (that is, "patient dumping")." *Byrne v. Cleveland Clinic*, 684 F. Supp. 2d 641, 650 (E.D. Pa. 2010) (citing *Torretti v. Main Line Hospitals, Inc.,* 580 F.3d 168, 173 (3d Cir.2009) (internal citations omitted); *see Power v. Arlington Hosp. Ass'n,* 42 F.3d 851, 856 (4th Cir.1994)). EMTALA "requires hospitals to give certain types of medical care to individuals seeking emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside hospital facilities." *Torretti,* 580 F.3d at 172–73 (citing *Urban v.*

5

*King,* 43 F.3d 523, 525 (10th Cir.1994)).  EMTALA includes the following whistle-blower-protection provision:

> A participating hospital may not penalize or take adverse action against a qualified medical person described in subsection (c)(1)(A)(iii) or a physician because the person or physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized or against any hospital employee because the employee reports a violation of a requirement of this section.

42 U.S.C. § 1395dd(i).

To state a plausible claim of retaliation under EMTALA, a plaintiff must allege that: "(1) she engaged in conduct that is protected by EMTALA; (2) her employer subsequently took an adverse employment action against her; and (3) the employer did so because she engaged in protected activity." *Gillispie v. RegionalCare Hosp. Partners Inc*, 892 F.3d 585, 593 (3d Cir. 2018) (citation omitted).  Painadath has not stated a plausible claim because, although he describes an alleged EMTALA violation, he does not allege that he reported the violation to anyone prior to his termination, and therefore has not plausibly alleged the first element of a claim.  *Gillispie*, 892 F.3d at 593-97 (affirming summary judgment on EMTALA retaliation claim where plaintiff did not establish that she had reported alleged EMTALA violation).  Painadath may amend his claim to include facts, if any, which could show he reported an EMTALA violation or engaged in other protected conduct, as well as facts that establish the other elements of an EMTALA claim.

### B

Painadath also asserts wrongful termination and retaliation claims under Title VII.  Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444,

448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). For a wrongful termination claim to be plausible a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified for the position the plaintiff held or sought, (3) that the plaintiff suffered an adverse employment action, and (4) that the circumstances of the adverse employment action give rise to an inference of discrimination. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007); *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir.1998). However, to plead a wrongful termination claim under Title VII, the complaint need not allege each element of a *prima facie* case as set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("A determination whether a *prima facie* case has been made, however, is an evidentiary inquiry – it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination. . . . Even post-*Twombly*, that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element." (internal citation omitted)). Rather, a complaint must allege facts that provide fair notice of a plaintiff's claim and demonstrate a plausible right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").

For a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) he engaged in conduct protected by Title VII; (2) the employer took adverse action against him; and (3) a causal link exists between his protected conduct and the employer's adverse action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation omitted). Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). But s*ee Burlington N. & Santa Fe Ry*., 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)). Rather, only complaints about discrimination prohibited by Title VII - that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2 - constitute "protected activity." *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (citing *Barber v. CSX Distrib. Servs*., 68 F.3d 694, 701-02 (3d Cir. 1995)). "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Id*. at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, Inc., 450 F.3d 130, 135 (3d Cir. 2006)). "General complaints of unfair treatment will not suffice." *Id*. (citing *Barber*, 68 F.3d at 702).

While he alleges that he was fired, Painadath fails to allege a plausible wrongful termination claim because he does not allege he is a member of a protected class, he was qualified for his position, and circumstances of the adverse employment action that give rise to an inference of discrimination. Rather, Painadath asserts in conclusory fashion only that his termination was retaliatory, but the nature of his protected

activity is unclear.  He describes calling hospital security to report aggressive behavior by his colleagues and alleges that he was suspended two days after that incident, but it is not clear that the alleged incident was the product of discrimination or that calling security constituted protected activity.  (AC at 7.)  He also alleges that in the course of a job interview, he was encouraged to discontinue a Title VII lawsuit then pending against a different employer.  (*Id.*)  However, as alleged, he had already been suspended at the time of the job interview, and it is not clear that he is asserting that his pursuing an unrelated civil action resulted in his termination.

    For the foregoing reasons, the Court will dismiss Painadath's AC without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  He will be granted leave to file a second amended complaint.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

    An appropriate Order follows.

                                      **BY THE COURT:**

                                      ***/s/ Gerald J. Pappert***
                                      **Gerald J. Pappert, J.**