IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY J. PAINADATH, | : | |
|    *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-6567 |
| | : | |
| THOMAS JEFFERSON | : | |
| UNIVERSITY HOSPITALS, *et al.*, | : | |
|    *Defendants*. | : | |

**MEMORANDUM**

**Pappert, J.**                                                                                    **October 9, 2025**

*Pro se* plaintiff Jerry J. Painadath filed a second amended complaint (Dkt. No. 12), asserting claims against his former employers, Thomas Jefferson University Hospitals (TJUH") and Jefferson Einstein Hospital ("JEH"). (SAC at 2-3.) For the following reasons, the Court dismisses the second amended complaint with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I[1]

In his original complaint, Painadath asserted employment claims and a claim pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C.A. 1395dd, *et seq.* ("EMTALA") against TJUH and JEH. *Painadath v. Thomas Jefferson Univ. Hosp.*, No. 24-6567, 2025 WL 860495 (E.D. Pa. Mar. 16, 2025). Upon statutory screening, the Court dismissed the complaint without prejudice for failure to state a

---

[1] The factual allegations set forth in this Memorandum are taken from Painadath's SAC (Dkt. No. 12). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Painadath's pleading will be corrected for clarity.

claim. *Id*. at *2-*3. Specifically, the Court determined that EMTALA did not provide Painadath with a basis for a plausible claim, and, construing the complaint as asserting an employment-based claim, determined that the factual allegations did "not provide enough information to put the named Defendants on notice of the basis for the claims against them." *Id*. at *2. Painadath was granted leave to file an amended complaint. *Id*. at *3.

Upson statutory screening of the amended complaint, the Court construed it as asserting a claim under EMTALA's whistleblower protection provision, and Title VII claims for wrongful termination and retaliation. *Painadath v. Thomas Jefferson Univ. Hosp.*, No. 24-6567, 2025 WL 1839492, at *1 (E.D. Pa. July 3, 2025). The Court dismissed Painadath's EMTALA claim because Painadath did not allege that he reported an EMTALA violation prior to his termination. *Id*. at *3. The Court dismissed his Title VII wrongful termination claim because he did not allege that he was a member of a protected class who was qualified for the position he held, or that the circumstances surrounding the adverse employment action he experienced gave rise to an inference that his suspension and/or termination were the result of discrimination. *Id*. at *4. The Court dismissed his Title VII retaliation claim because he did not allege that he engaged in "protected activity" or that his suspension and/or termination were the result of that activity. *Id*. Painadath was granted leave to file a second amended complaint to cure the pleading defects identified by the Court.

In his latest pleading, Painadath alleges that he was hired as a nurse on June 5, 2023 following an interview with Amina Harris and Madeline Smallwood, both associated with JEH. (SAC at 3-4.) During his employment, Madeline Smallwood was

his Nurse Manager, Amina Harris was the Director of Nursing, Alexis Suarez was his Human Resources representative, and Michael Cahill was an Administrator. (*Id*. at 4.) In October, 2023, while making rounds, Painadath observed a patient experiencing an "Emergency Medical Condition." (*Id*.) He notified Smallwood and a physician, and, when the patient began deteriorating also attempted to contact Harris. (*Id*. at 4-5.) Upon review of the patient's chart, Painadath learned that he had been treated in the Emergency Room for chest pains and other symptoms, and that the treating physician had recommended the patient be admitted to the Intensive Care Unit for stabilization. (*Id*. at 5.) Instead, the patient was transferred to Willow Crest Unit, where Painadath was assigned. (*Id*.) Painadath sought and obtained a transfer order to send the patient to the Emergency Room for a "Medical Screening Examination." (*Id*.) When Painadath and hospital transport personnel attempted to transfer the patient, Smallwood blocked the door and yelled at Painadath, "Don't send this patient to ER. We will teach you a lesson if you send this patient to ER." (*Id*. at 6.) Painadath claims that the patient's transfer to Willow Crest constituted an EMTALA violation, because the patient should have been admitted to the Intensive Care Unit, not Willow Crest. (*Id*.)

Painadath alleges that on an unidentified date, his timely request for vacation was denied. (*Id*. at 7.) He further alleges that on November 7, 2023, he was ridiculed and belittled, his work was "over-scrutinized" by Smallwood and he was physically assaulted by Ade Gibbs, a unit secretary at Willow Crest. (*Id*.) Hospital security responded to Painadath's request for assistance, and while they were attempting to de-escalate the situation, Gibbs threatened them, screaming, "I will cut everybody's throat," "Free Khalistan," and "Free Palestine." (*Id*.) Two days later, Painadath was

suspended without pay.  (*Id.*)  On December 1, 2023, Defendants terminated Painadath's employment.

Painadath also alleges that on November 17, 2023, while under suspension, he attended a job interview at Logan Square Rehabilitation and Healthcare Center.  (*Id.*) During the interview, Administrator Cahill called Painadath and told him, "We will help elevate your career, but you have to give up your lawsuit against Good Shepard Partners," apparently a reference to a suit he filed against a former employer.  (*Id.* at 7-8.)  He claims that Cahill's demand constituted actionable conduct under the public policy exception to Pennsylvania's at-will employment doctrine, because the First Amendment protects the right to pursue lawsuits to resolve disputes and seek legal remedies.  (*Id.* at 8.)  He does not allege that he discontinued any lawsuit as a result of Cahill's demand.

Painadath asserts claims against TJUH and JEH for retaliation under EMTALA and wrongful termination and retaliation under Title VII.  (*Id.* at 8-9.)  He seeks reinstatement to his job and such relief as the Court deems appropriate, without stating any specific monetary demand.  (*Id.* at 9.)

## II

The Court has already granted Painadath leave to proceed *in forma pauperis*, and accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the second amended complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the

second amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the second amended complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Painadath is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*; s*ee also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support."). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

5

III

The Court understands Painadath to be reasserting a claim pursuant to EMTALA's whistleblower protection provision, and Title VII wrongful termination and retaliatory termination claims. These claims are not plausible.

A

The Court previously explained Congress's purpose in enacting EMTALA and described its whistleblower protection provision. *Painadath*, 2025 WL 1839492, at *3. Additionally, the Court explained that in order to state a plausible claim under the provision, a plaintiff must allege that: "(1) she engaged in conduct that is protected by EMTALA; (2) her employer subsequently took an adverse employment action against her; and (3) the employer did so because she engaged in protected activity." *Id*. (quoting *Gillispie v. RegionalCare Hosp. Partners Inc*, 892 F.3d 585, 593 (3d Cir. 2018) (citation omitted). The Court determined that the claim asserted in Painadath's amended complaint was not plausible because, although he described an alleged EMTALA violation, he did not allege that he reported the violation to anyone prior to his termination and therefore had not plausibly alleged the "protected conduct" element of the claim. *Id.* (citing *Gillispie*, 892 F.3d at 593-97 (affirming award of summary judgment on EMTALA retaliation claim where plaintiff did not establish that she had reported alleged EMTALA violation)). The Court dismissed the claim, but granted Painadath leave to file a second amended complaint "to include facts, if any, pertaining to his reporting of an EMTALA violation or other protected conduct, as well as facts that support plausibly the other elements of an EMTALA claim." *Id*.

In his second amended complaint, Painadath does not allege facts describing his reporting of an EMTALA violation and has thus not cured this defect in his claim. As Painadath has already been given an opportunity to do so and has not, further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

B

The Court understands Painadath's second amended complaint to include previously asserted Title VII wrongful termination and retaliation claims. The Court previously explained the pleading requirements for these claims. *Painadath*, 2025 WL 1839492, at *3-*4 (citations omitted). Specifically, the Court instructed that in order to state a plausible wrongful termination claim, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified for the position he held or sought, (3) that the plaintiff suffered an adverse employment action, and (4) that the circumstances of the adverse employment action give rise to an inference of discrimination. *Id*. at *3 (quoting *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007)). For a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) he engaged in conduct protected by Title VII; (2) the employer took adverse action against him; and (3) a causal link exists between his

7

protected conduct and the employer's adverse action." *Id.* at *4 (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation omitted)).

Painadath alleges that his employment was terminated. (Second amended complaint at 8.) He does not, however, allege that he is a member of a protected class who was qualified for his position and does not allege facts giving rise to an inference that his termination was the result of discrimination. *See, e.g., Painadath*, at *3 (citing *Johnson*, 214 F. App'x at 241). To the extent he seeks to reassert a retaliation claim under Title VII, he has failed to do so, because the nature of his protected activity remains unclear. In order to demonstrate that he engaged in a protected activity, a plaintiff must show that he (1) opposed a practice made unlawful by Title VII, (2) filed a charge of discrimination, or (3) participated in a charge brought by another. 42 U.S.C. section 200oe–3a. The United States Supreme Court has held that simply opposing an employment practice does not rise to the level of a protected activity if no reasonable person could believe that the actions complained of were unlawful. *Clark Cnty. School District v. Breeden*, 532 U.S. 268, 271 (2001) (*per curiam*) (holding that no *prima facie* case under Title VII was established where no reasonable person could have believed she was complaining of protected activity). Painadath describes calling hospital security to report a co-worker's aggressive behavior and that he was suspended two days after that incident. But the co-worker's aggressive behavior was not an employment practice prohibited under Title VII and his report of the behavior thus cannot satisfy the protected activity element. (SAC at 7.) He also alleges again that in the course of a job interview, he was encouraged by Administrator Cahill to discontinue a Title VII lawsuit then pending against a *different employer*. (*Id.* at 7-8.) However,

8

Painadath asserts he had already been suspended from JEH at the time of the job interview, and he fails to allege any facts about how his conversation about an unrelated lawsuit caused him to suffer an adverse employment action.  Notably, he makes the allegation about his discussion with Administrator Cahill only in the context of a public policy exception to Pennsylvania's at-will employment doctrine, rather than related to any Title VII-protected conduct.  (SAC 7-8.)  It is not clear that he is even asserting that his pursuit of an unrelated civil action resulted in his termination.  As such, he has again failed to allege a causal link between his exercise of his First Amendment right to pursue a lawsuit, (*see* SAC at 8), and the termination of his employment.  In short, as pled, his reasserted retaliation claims again are not plausible.  *See Painadath*, 2025 WL 1839492, at *4.  These claims will also be dismissed with prejudice because further attempts to amend would be futile.  *See Jones*, 944 F.3d at 483.

IV

For the foregoing reasons, the Court will dismiss Painadath's second amended complaint with prejudice.  An appropriate Order follows.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**GERALD J. PAPPERT, J.**

9